**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| NANCY D., <br><br>          Plaintiff, <br><br>    v. <br><br> KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, <br><br>          Defendant. | Civil Action No. 22-05084 (GC) <br><br> **OPINION** |

**CASTNER, District Judge**

    **THIS MATTER** comes before the Court upon Nancy D.'s[1] ("Plaintiff") appeal from the final decision of the Commissioner of the Social Security Administration ("Defendant" or the "Commissioner"), denying Plaintiff's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423, *et seq*, and supplemental security income ("SSI") benefits under Title XVI of the Social Security Act[2], 42 U.S.C. §§ 1381 to 1383f.[3]   The Court has

---

[1]    The Court identifies Plaintiff by first name and last initial pursuant to D.N.J. Standing Order 2021-10.

[2]    "Supplemental security income is a federal income supplement program funded by general tax revenues (not social security taxes). It is designed to help aged, blind and disabled individuals who have little or no income. Insured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits."  *Oldenburgh v. Astrue*, Civ. No. 08-1671, 2009 WL 812010, at *1 (M.D. Pa. Mar. 26, 2009).

[3]    "The standard for determining whether a claimant is disabled is the same for both DIB and SSI." *Searles v. Comm'r of Soc. Sec.*, Civ. No. 18-15804, 2019 WL 6337890, at *1 n.3 (D.N.J. Nov. 27, 2019) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 551 n.1 (3d Cir. 2005)).

jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g) and reaches its decision without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b).

For the reasons set forth below, and other good cause shown, the Court **AFFIRMS** the Commissioner's decision.

# I.   **BACKGROUND**

### A.   PROCEDURAL HISTORY

Plaintiff applied for disability insurance benefits and supplemental social security income on December 5, 2019, alleging an onset date of November 1, 2018. (Administrative Record ("AR") 15[4]).

Plaintiff's claim was initially denied on August 21, 2020, and again upon reconsideration on October 5, 2020. (*Id.*) The Administrative Law Judge ("ALJ") conducted an Administrative Hearing (the "Hearing") on March 29, 2021, following which the ALJ issued a decision on September 13, 2021, finding that Plaintiff was not disabled. (*Id.* at 15-33.) The Appeals Council denied Plaintiff's request for review on July 6, 2022. (*Id.* at 1-3.)

On August 17, 2022, Plaintiff filed this appeal in the United States District Court for the District of New Jersey. (*See* ECF No. 1.) The Commissioner filed the Administrative Record on October 14, 2022. (*See* ECF No. 3.) Plaintiff filed her moving brief on January 25, 2023, pursuant to Local Civil Rule 9.1. (*See* ECF No. 12.) The Commissioner filed opposition on February 27, 2023 (*see* ECF No. 13), and on February 20, 2023, Plaintiff filed her reply (*see* ECF No. 14).

---

[4]   The Administrative Record ("Record" or "AR") is available at ECF No. 3-1 through 3-11. Citations to the Record will reference only page numbers in the Record without the corresponding ECF numbers. However, page numbers for brief cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

**B.      THE ALJ'S DECISION**

On September 13, 2021, the ALJ issued his decision finding that Plaintiff is not disabled. (*Id.* at 15-33.) The ALJ set forth the Social Security Administration's ("SSA") five-step sequential process for determining whether an individual is disabled.  (*Id.* at 16-17.)  The ALJ found that Plaintiff met the insured status requirements under the Social Security Act through December 31, 2018.  (*Id.* at 18.)

At step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity[5] since November 1, 2018, the alleged disability onset date.  (*Id.*)

At step two, the ALJ found that Plaintiff had the following severe impairments: rheumatoid arthritis, fibromyalgia, degenerative disc disease, degenerative joint disease, and chronic obstructive pulmonary disease.  (*Id.*)  The ALJ found that the Record indicated several other non-severe impairments such as: stroke/cerebrovascular accident (CVA), hypertension, hypercholesterolemia, irritable bowel syndrome, status post-carpal tunnel surgery, concussion/closed head injury, migraine/headache, parotid mass/nodule, "overweight" status, and decreased visual acuity.  (*Id.* at 19.)

At step three, the ALJ determined, after a comprehensive examination of Plaintiff's medical conditions, that none of Plaintiff's impairments, or combination of impairments, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (hereinafter, "Appendix 1").  (*Id.* at 24.)

---

[5]      "Substantial gainful activity is work activity that is both substantial and gainful." 20 C.F.R. §§ 404.1572, 416.927.  Substantial work activity "involves doing significant physical or mental activities. [A claimant's] work may be substantial even if it is done on a part-time basis or if [she] do[es] less, get[s] paid less, or ha[s] less responsibility than when [she] worked before."  *Id.* §§ (a).  "Gainful work activity is work activity that the claimant do[es] for pay or profit.  Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." *Id.* §§ (b).

At step four, the ALJ next found that Plaintiff possessed the residual functional capacity ("RFC") to perform sedentary work with detailed limitations.[6]  (*Id.* at 25.)

Finally, at step five, the ALJ found Plaintiff capable of performing past relevant work as a loan officer.  (*Id.* at 32.)  The ALJ, accordingly, found that Plaintiff had not been disabled from November 1, 2018, through the date of the decision.  (*Id.* at 33.)

## II.   LEGAL STANDARD

### A.   DISABILITY DETERMINATION

An individual is "disabled" and, therefore, eligible for disability insurance benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The individual's impairment must be severe to the point that the individual cannot engage in his previous work or in "any other kind of substantial gainful work which exists in the national economy," *i.e.*, work that exists in significant numbers either in the region where such individual lives or in several regions of the country.  42 U.S.C. §§ 423(d)(2)(A), 1382a(3)(B); *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999).  A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

---

[6]     The ALJ stated that Plaintiff could perform sedentary work with the exception of "occasional climbing, balancing, stooping, kneeling, crouching, and crawling; frequent reaching, handling, fingering, and feeling; and frequent exposure to extreme cold and heat, wetness and humidity, dust, fumes, odors, and pulmonary irritants, and hazards such as unprotected heights and moving machinery."  (AR 25.)

The Commissioner employs a five-step sequential evaluation process for social security claims. *See* 20 C.F.R. §§ 416.920, 404.1520(a)(4). The claimant bears the burden of proof for the first four steps of the analysis, and the burden shifts to the Commissioner of the SSA for the fifth step. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007); *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

*First*, a claimant must not have engaged in substantial gainful activity since the alleged disability onset date. 20 C.F.R. §§ 404.1520(a)(4)(i) & (b), 416.920(4)(i) & (b).

*Second*, the Commissioner considers "the medical severity of [the claimant's] impairment(s)." *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The claimant must have a "medically determinable impairment" or combination of impairments severe enough to limit the claimant's ability to perform basic work activities for a continuous period of at least twelve months. *Id.*; *id.* at § 404.1509; § 416.909. The claimant bears the burden of establishing the first two requirements, and failure to satisfy either of the first two requirements automatically results in denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If the claimant satisfies her burden at steps one and two, she proceeds to the third step.

*Three*, the Commissioner considers the "medical severity of [the claimant's] impairment(s)." *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The impairment or impairments must meet or equal a listing in Appendix 1 of C.F.R. Part 404, Subpart P. *Id.* §§ 404.1520(d), 416.920(d). The impairment or impairments are "medically equivalent to a listed impairment . . . if [they are] at least equal in severity and duration to the criteria of any listed impairment." *Id.* §§ 404.1526(a), 416.926(a). If the claimant is able to make a sufficient showing at step three, she is deemed disabled. *Id.* §§ 404.1520(a)(iii), 416.909(a)(iii).

*Fourth*, if the claimant fails to make a sufficient showing at the third step, the analysis proceeds to an evaluation of the claimant's RFC and past relevant work at the fourth step. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).   RFC is the most the claimant can do in a work setting despite her limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1). The Commissioner "assess[es] [the claimant's RFC] based on all the relevant evidence in [his] case record," and "consider[s] all of [the claimant's] medically determinable impairments," including ones that are not "severe" pursuant to §§ 404.1520(c), [416.920(c),] 404.1521, [416.921,] 404.1523[, and 416.923]. Id. §§ 404.1545(a)(2), 416.945(a)(2).  Past relevant work is "work that [the claimant] ha[s] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* §§ 404.1560(b)(1), 416.960(b)(1).  "The claimant bears the burden of demonstrating an inability to return to [her] past relevant work." *Plummer*, 186 F.3d at 428 (citing *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994)). If the claimant is incapable of performing her past relevant work, the analysis proceeds to the fifth and final step.   *See id.* § 404.1520(a)(4)(iv)-(v); § 416.920(a)(4)(iv)-(v) *Plummer*, 186 F.3d at 428.

*Fifth*, and finally, the claimant must be unable to adjust to other work in light of her RFC, age, education, and work experience to be considered disabled.  *See id.* §§ 404.1520(a)(4)(v) & (g), 416.920(a)(4)(v) & (g).  Before denying a claim at step five, the Commissioner must show that the claimant is capable of other work existing "in significant numbers in the national economy." *Id.* §§ 404.1560(c)(2), 416.960(c)(2); *see also Poulos*, 474 F.3d at 92.

### B.   STANDARD OF REVIEW

District courts may "affirm[], modify[], or revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  In reviewing the decision, the court determines whether the ALJ's findings are supported by

substantial evidence. *See id.*; *see also Poulos*, 474 F.3d at 91. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (internal quotation marks and citation omitted).

The district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Thus, this limitation on a reviewing court's discretion applies "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). The Court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (internal citation omitted).

## III.   DISCUSSION

Based on the Court's review of the ALJ's decision (*see* AR 15-33), and the Administrative Record submitted by the Commissioner (*see generally* AR), the Court finds good cause to affirm the Commissioner's decision. In reaching a decision, an ALJ must evaluate the evidence and explain the reasons for accepting or rejecting evidence. *Cotter*, 642 F.2d at 706. Here, the ALJ provided sufficient reasoning for the Court to determine that his findings are supported by substantial evidence.

In support of her appeal, Plaintiff advances three principal arguments why the ALJ's decision should be reversed: (1) "the ALJ failed to provide a proper assessment of the plaintiff's residual functional capacity" (*see* ECF No. 12 at 22-35); (2) "the ALJ failed to properly evaluate the evidence of record" (*see id.* at 35-43); and "the ALJ's Step 4 finding is unsupported by substantial evidence" (*see id.* at 43-45). The Court will address these arguments in turn.

### A.   PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY

#### 1.   FIBROMYALGIA

Plaintiff argues that the ALJ's RFC was improper because the ALJ did not include any limitations from Plaintiff's fibromyalgia impairment in the RFC, even though he found it was a severe impairment.[7] (*Id.* at 27.)

Plaintiff must demonstrate the existence of a medically determinable impairment, however, by objective medical evidence. A medically determinable impairment "result[s] from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). "Objective medical evidence means signs, laboratory findings, or both." 20 C.F.R. § 404.1502(f); § 416.902(k).

At step two, the ALJ indicated that Plaintiff's fibromyalgia was a severe impairment. (AR 18.) At step three, the ALJ found that fibromyalgia is not a listed impairment. (*Id.* at 25.) Since it is not a listed impairment, the ALJ was required to evaluate whether fibromyalgia was medically equal to a listed impairment, or whether the fibromyalgia in combination with another medically

---

[7]     An impairment is severe if "it significantly limits an individual's physical or mental abilities to do basic work activities." (20 C.F.R. § 404.1529(c); § 416.929(c)).

determinable impairment equaled a listed impairment.[8]  20 C.F.R. § 404.1526(a); § 416.926(a).

The ALJ did so.  To start, the ALJ noted Plaintiff's fibromyalgia-related complaints in the decision.

(AR 25.)  For instance, Plaintiff claimed she had constant pain and that "her brain feels like it is

not in her head, and she is confused with difficulties remembering things." (*Id.* at 26.)  The ALJ

found that:

> the claimant's medically determinable impairments could
> reasonably be expected to cause the alleged symptoms; however, the
> claimant's statements concerning the intensity, persistence and
> limiting effects of these symptoms are not entirely consistent with
> the medical evidence and other evidence in the record for the reasons
> explained in this decision. Further, the claimant's statements about
> the intensity, persistence, and limiting effects of her symptoms are
> inconsistent because they are not entirely consistent with the record,
> for the reasons detailed at length below.
>
> [(*Id.* at 26-27.)]

The ALJ found that Plaintiff's claims that her fibromyalgia was disabling to be inconsistent

with objective medical evidence contained in the record. The ALJ cited medical records from

Francky Merlin, M.D. ("Dr. Merlin"), a consultative examiner involved in this case, which

suggested that she was alert, oriented, and responsive; had normal strength and reflexes; her

grasping strength and manipulative functions were not impaired; and she had a normal gait, no

difficulty getting on or off the examination table, could squat, and flex her spine forward. (*Id.* at

949.) The ALJ further supported his finding that Plaintiff's fibromyalgia was not disabling with

---

[8]      SSR 12-2p provides guidance on fibromyalgia social security claims. Upon review of SSR 12-2p, the ALJ acted in accordance with this guidance.  For instance, SSR 12-2p indicates that fibromyalgia can be compared to inflammatory arthritis, which is considered an impairment under listing 14.09. The ALJ compared Plaintiff's fibromyalgia and rheumatoid arthritis, singly, and in combination, and found that it did not equal inflammatory arthritis under Listing 14.09 because "the record does not reveal, at the level of severity contemplated by the listings, the requisite ankylosing spondylitis, other spondyloarthropathies, a persistent inflammation or persistent deformity, or at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss." (AR 25.)

additional objective medical records contained in the record.  (*See* AR 28 citing (AR 372-73, 543, 548; 602, 608, 983).)

The ALJ also highlighted Plaintiff's claims that she needed assistance with daily activities as she is forgetful in part due to brain fog.  (*Id.* at 29.)  However, the ALJ cites contradictory record evidence that Plaintiff is able to perform a wide variety of activities:

> including performing personal care activities, doing chores (like sweeping floors and doing laundry, albeit with her niece helping her with "big cleaning weekly"), preparing meals (albeit with her son helping), driving (albeit "locally"), making crafts (albeit, "is in physical pain so it takes her a lot longer to make them") shopping in stores and online with no assistance, spending time with friends in person and via talking on the phone, participating in group texts with her family, attending doctor's appointments, and living with her mother (who has "dementia") and her son without reported difficulty interacting with them.

[(*Id.* at 29-30 (citing AR 126).)]

Additionally, the ALJ also did not totally discredit Plaintiff's subjective symptoms.  For instance, the ALJ stated: "the undersigned accounted for the claimant's subjective allegations (including, but not limited to, pain) and potential medication side effects (such as fatigue/tiredness), as well as for the waxing and waning of fibromyalgia symptoms, when making this assessment."  (*Id.* at 30.)

Plaintiff's challenge to the ALJ's RFC finding merely asks the Court to reweigh the evidence.  But as noted earlier, the Court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  *Williams*, 970 F.2d at 1182.  Moreover, "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence."  *Hartranft*, 181 F.3d at 362 (affirming district court's affirmation of the ALJ's decision because the ALJ's finding that the plaintiff's "testimony about the extent of his pain was exaggerated" was based on substantial evidence).  Here, the ALJ cited objective medical evidence throughout the

record that contradicted Plaintiff's allegations that her fibromyalgia was disabling. As noted above, the ALJ also considered Plaintiff's fibromyalgia in determining Plaintiff's RFC. (AR 30 (stating that the ALJ included Plaintiff's subjective fibromyalgia complaints when making his RFC assessment).) As such, the ALJ did not fail to provide a proper RFC assessment. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) ("the ALJ considered [plaintiff's] subjective complaints together with the entire record, including all of the medical reports, and ultimately [found] that her condition was not severe enough to prevent her from performing certain types of sedentary work.")

### 2. OTHER IMPAIRMENTS

Plaintiff next argues that the ALJ failed to address Plaintiff's stroke/CVA, post-concussion/closed head injury, irritable bowel syndrome and chronic diarrhea, and depression and anxiety when performing Plaintiff's RFC assessment. (ECF No. 12 at 28-32.)

At step two, the ALJ is tasked with determining whether the claimant's impairment or impairments are considered severe or non-severe. 20 C.F.R. § 404.1520(c); § 416.920(c). As noted earlier, the ALJ found that Plaintiff's rheumatoid arthritis, fibromyalgia, degenerative disc disease, degenerative joint disease, and chronic obstructive pulmonary disease were all severe. (AR 18.) To add, the ALJ found that Plaintiff's CVA, head injuries, irritable bowel syndrome, and mental disorders were non-severe. (*Id.* at 19-24.)

As a threshold matter, when an ALJ explicitly indicates that he has considered both severe and non-severe impairments in combination with one another, there is no reason to disbelieve the ALJ absent contradicting evidence. *Morrison v. Comm'r of Soc. Sec.*, 268 F. App'x 186, 189 (3d Cir. 2008) (noting that where the ALJ "explicitly indicated a number of times that he was considering the impairments in combination . . . we see no reason to not believe him.").

11

Additionally, "the ALJ is not required to repetitively analyze each symptom at each step; the requirement is that the decision be subject to 'meaningful review' by a reviewing court." *Trzeciak v. Colvin*, Civ. No. 15-6333, 2016 WL 4769731, at *5 (D.N.J. Sept. 12, 2016).

Here, the ALJ methodically goes through each of Plaintiff's non-severe impairments and provides a rationale for each of these sub-findings. (*See* AR 18-24.) Regarding Plaintiff's CVA, the ALJ notes that Plaintiff suffered an acute stroke/CVA in February 2020, which resulted in a three-day emergency room visit. (*Id.* at 19.) The ALJ then notes how Plaintiff was discharged in an improved/stable condition, and that the record did not reveal an ongoing treatment for the stroke/CVA. (*Id.*) The ALJ also notes that Plaintiff suffered from a concussion in May 2019 when she fell and hit her head with hedge clippers, which resulted in an emergency room visit. (*Id.*) The ALJ then adds that Plaintiff was discharged from the hospital the same day in improved/stable condition, and that Plaintiff was not receiving ongoing treatment for her head injury. (*Id.*) The ALJ further states that Plaintiff suffers from irritable bowel syndrome, but that her symptoms are controlled. (*Id.* at 19,21.) The ALJ also includes that Plaintiff suffers from several mental impairments, but these impairments did not cause more than a minimal limitation in her ability to perform basic mental work functions. (*Id.*) In making this finding as to Plaintiff's mental impairments, the ALJ cited objective medical evidence indicating Plaintiff has not received specialized treatment for her mental impairments, and mental status exam results that found "no abnormal . . . findings." (*Id.* at 23.)

The ALJ also sufficiently discusses whether Plaintiff's impairments singly and in combination met or equaled any of the listed impairments contained in federal regulations. (*Id.* at 24-25.) At the end of the ALJ's step two analysis, he states that "he reviewed and considered all severe and non-severe impairments in formulating the residual functional capacity below, and,

where appropriate, the undersigned has included limitations to address the claimant's non-severe impairments and subjective complaints." (*Id.* at 24.) Plaintiff fails to cite contradictory evidence that would support a finding that the ALJ did not consider all-severe and non-severe impairments in conjunction with one another when determining Plaintiff's RFC. *See Morrison*, 268 F. App'x at 189. As indicated above, the ALJ was not required to "repetitively analyze each symptom at each step." *Trzeciak*, 2016 WL 4769731, at *5. Instead, the ALJ is required to provide sufficient information in his decision to allow the reviewing court to perform a "meaningful review." *Id.* The ALJ did so by detailing his findings as to each of Plaintiff's impairments with citations to the record evidence. (AR 18-24.) The ALJ then considered each impairment singly and in combination with another to determine if they met or equaled a listing. (*Id.* at 24-25.) Finally, the ALJ incorporated all symptoms into his RFC "to the extent … [the] symptoms can reasonably be accepted as consistent with objective medical evidence" including the symptoms caused by Plaintiff's stroke/CVA, post-concussion/closed head injury, irritable bowel syndrome and chronic diarrhea, and depression and anxiety. (*Id.* at 25.)

As such, the ALJ's RFC assessment was not erroneous.

3. MENTAL IMPAIRMENTS

Next, Plaintiff takes issue with the ALJ's findings that Plaintiff's anxiety "does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non-severe." (AR 22.)

The ALJ is instructed to use the "special technique" designed for the evaluation of mental impairments, outlined in the regulations, to first determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. §§404.1520a(b)(1), 416.920a(b)(1). To do this, the ALJ must "evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings." *Id.*

(citing 20 C.F.R. §§ 404.1521 & 416.921). If this evaluation shows that the claimant has a medically determinable mental impairment, the ALJ must "specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [the] findings in accordance with paragraph (e) of this section," *see id.*, and "incorporate the pertinent findings and conclusions based on the technique" into the written decision, *see id.* §§ (e)(4). "The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)" and "must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section." *Id.* According to paragraph (c), there are "four broad functional areas in which [the ALJ] will rate the degree of [the claimant's] functional limitation: [u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *Id.* §§ (c)(3) (citing 12.00E of the Listing of Impairments in Appendix 1).

The ALJ properly followed these steps. First, the ALJ notes that Plaintiff testified that she "forgets questions in the middle of answering them . . . that she is unable to pay attention or follow a conversation … that she has difficulties remembering things … that she needs assistance with daily activities . . . and that there is something going on in her brain." (AR 23.) The ALJ then noted how some of these symptoms were contradicted by evidence in the record. (*Id.*) For instance, the ALJ states:

> However, the claimant also reported graduating from high school, never being in special education, having no problems with attention span, having no problems following directions, and having no difficulties getting along with family, friends, neighbors, or the public []. She additionally reported performing a wide variety of activities, including performing personal care activities, doing chores (like sweeping floors and doing laundry, albeit with her niece helping her with "big cleaning weekly"), preparing meals (albeit

with her son helping), driving (albeit "locally"), making crafts (albeit, "is in physical pain so it takes her a lot longer to make them"), shopping in stores and online with no assistance, spending time with friends in person and via talking on the phone, participating in group texts with her family, attending doctor's appointments, and living with her mother (who has "dementia") and her son without reported difficulty interacting with them []. Further, despite symptoms, the claimant performs the above-stated activities without reported difficulty in planning these activities, avoiding normal hazards while pursing these activities (like avoiding cars while crossing a street) or dealing with changes (like a changed appointment time or traffic pattern) []."

[(*Id.*)]

The ALJ further noted that the record was devoid of any evidence indicating that Plaintiff received any emergency mental health treatment, a psychiatric hospitalization, mental health treatment with a specialist, or even mental health treatment at a free or community clinic. (*Id.*) Evidence in the record such as mental status exams indicate that Plaintiff was "alert, fully oriented, cooperative, "and/or not in any noted distress and having a normal or appropriate mood/affect, normal speech, normal cognition, normal memory, good judgment, and/or no noted abnormal mental status exam findings." (*Id.*)

Based on the evidence in the record, the ALJ found that Plaintiff had a mild limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a mild limitation in concentrating, persisting, or maintaining pace, and a mild limitation in a adapting or managing oneself.[9] (*Id.* at 22.)

After properly using the "special technique" designed for the evaluation of mental impairments, the ALJ then applied his findings to the RFC assessment. (*Id.* at 24 (stating "the

---

[9]     While the Court notes that Plaintiff was prescribed Cmybalta for her anxiety from a non-mental health specialist, this does not contradict the ALJ's findings that Plaintiff's anxiety was not severe. *See Walker v. Comm'r of Soc. Sec.*, 61 F. App'x 787, 789 (3d Cir. 2003) (noting that medication alone is not enough to contradict an ALJ's finding that a mental illness is not severe).

undersigned has reviewed and considered all severe and non-severe impairments in formulating the residual functional capacity below"). In his RFC assessment, the ALJ did not include any restrictions for Plaintiff's mental illness as the ALJ concluded that "[Plaintiff] is not as limited as she alleged from a . . . mental health standpoint." (*Id.* at 30.) The ALJ did not err by doing so. *See Smith v. Comm'r of Soc. Sec.*, Civ. No. 15-7525, 2016 WL 3912850, at *9 (D.N.J. July 19, 2016) (Simandle, C.J.) ("The Court disagrees with Plaintiff's assertion that the ALJ failed to account for Plaintiff's non-severe mental limitations in formulating her RFC. The ALJ clearly considered Plaintiff's depression at step four, but concluded that Plaintiff's symptoms did not significantly limit her basic work activities."). Since the ALJ provided substantial evidence as to why he found Plaintiff only suffered mild mental limitations, the ALJ's RFC assessment was not erroneous. *Correa v. Comm'r of Soc. Sec.*, Civ. No. 20-00367, 2022 WL 17622967, at *6 (D.N.J. Dec. 13, 2022) (finding the ALJ's RFC assessment was not erroneous because it was based on substantial evidence).

### B. WEIGHT AFFORDED TO MEDICAL OPINIONS

Next, Plaintiff argues that the ALJ did not properly weigh the medical evidence of rheumatologist, James Fischkoff, M.D. ("Dr. Fischkoff") and Dr. Merlin.

Since Plaintiff's claim was filed after March 27, 2017, new medical opinion regulations apply to this case. After March 27, 2017, a "medical opinion" is defined as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities." *Compare* 20 C.F.R. §§ 404.1513(a)(2), 416.920(a)(2) (listing the following categories of abilities: "ability to perform physical demands of work activities," *id.* §§ (a)(2)(i)(A); "ability to perform mental demands of work activities," *id.* §§ (a)(2)(ii); "ability to perform other demands of work," *id.* §§

(a)(2)(iii); and "ability to adapt to environmental conditions," *id.* §§ (a)(2)(iv)), *with* 20 C.F.R.

§§ 404.1527(a)(1), 416.927(a)(1) (defining "medical opinion" for applications filed prior to Mar.

27, 2017).

The "treating physician rule" or "treating source rule" originates from the prior regulatory

scheme, under which, if the ALJ found that "a treating source's medical opinion on the issue(s) of

the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

evidence in [the] case record, [the ALJ] will give it controlling weight." 20 C.F.R.

§§ 404.1527(c)(2), 416.927(c)(2). The new regulatory scheme instructs that the ALJ "will not

defer or give any specific evidentiary weight, including controlling weight, to any medical

opinion(s) or prior administrative finding(s), including those from [the claimant's] medical

sources." 20 C.F.R. §§ 404.1520c(a), 920c(a). "The most important factors [the ALJ will]

consider when [he] evaluates the persuasiveness of medical opinions and prior administrative

medical findings are supportability[10] and consistency[11]." *Id.* (citing *id.* §§ (c)(1)-(2)).

### 1. DR. FISCHKOFF

The ALJ found Dr. Fischkoff's evidence to be "not persuasive" because

> While Dr. Fischkoff is a treating specialist, his opinion consists of
> conclusory statements on a checkbox-type form without an adequate
> written explanation containing citation to objective evidence.
> Further, while the claimant generally having exertional, postural,
> and reaching/manipulative limitations is generally consistent with

---

[10]  In considering the "supportability" of a medical opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

[11]  "The more consistent a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative filings will be." 20 C.F.R. § 404.1520c(c)(2).

the record, and while the claimant having an occasional climbing limitation is generally consistent with the record, the extent of limitation suggested or otherwise suggested in this opinion is inconsistent with the record. For example, despite the above-detailed abnormal objective findings since the alleged onset date, the record fails to document, since the alleged onset date, any noted nerve root impingement or tearing upon diagnostic imaging study, or exam findings of assistive device use, atrophy, pain behaviors (such as shifting in a chair while seated, having to stand/walk after sitting for a short period, having to sit after standing/walking for a short period, having to lie down after sitting/standing/walking for a short period, etc.), or any noted deficits in terms of alertness, orientation, mental status, or motor function []. Therefore, in light of the above, this opinion is not persuasive.

[(AR 31.)]

"A treating source's opinion is not entitled to controlling weight if it is inconsistent with the other substantial evidence in [the] case record." *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (internal quotations and citation omitted). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Deborah P. v. Kijakazi*, Civ. No. 20-12797, 2022 WL 1165698, at *6 (D.N.J. Apr. 19, 2022) (citation omitted). Following this, the ALJ "may choose whom to credit but cannot reject evidence for no reason or the wrong reason." *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019).

Here, substantial evidence supports the ALJ's decision to deem Dr. Fischkoff's evidence "not persuasive." Upon the Court's review of Dr. Fischkoff's questionnaire, his opinion is largely checkbox type answers with conclusory statements. (AR 818.) Additionally, the ALJ also cites contradictory evidence included in Dr. Fischkoff's opinion. (*Id.* at 31.) For example, the ALJ

highlights that Dr. Fischkoff notes Plaintiff has exertional, postural, and reaching/manipulative limitations, however, the ALJ states:

> The record fails to document, since the alleged onset date, any noted nerve root impingement or tearing upon diagnostic imaging study, or exam findings of assistive device use, atrophy, pain behaviors (such as shifting in a chair while seated, having to stand/walk after sitting for a short period, having to sit after standing/walking for a short period, having to lie down after sitting/standing/walking for a short period, etc.), or any noted deficits in terms of alertness, orientation, mental status, or motor function.

[(AR 31.)]

The ALJ discredits Dr. Fischkoff for a permissive reason and provides an adequate explanation; Dr. Fischkoff's opinion is contradicted by other evidence in the record. *See Sutherland*, 785 F. App'x at 928; *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 60 (3d Cir. 2017) (affirming district court's finding to give less weight to treating physician because it was contradicted by other evidence in the record). As such, the ALJ did not err by finding Dr. Fischkoff's opinion "not persuasive."

### 2. DR. MERLIN

Plaintiff also contends that the ALJ erred by not considering Dr. Merlin's opinion when assessing her RFC. This is factually inaccurate based on the record as the ALJ notes that while he did consider Dr. Merlin's report, Dr. Merlin did not prepare an opinion for the ALJ to analyze when determining Plaintiff's RFC. (AR 31.) Indeed, the ALJ is correct. Upon the Court's review of Dr. Merlin's notes, Dr. Merlin did provide a detailed report, but the report does not opine on Plaintiff's work-related functional limitations. (*See id.* at 948-50.) While Dr. Merlin does include some physical restrictions such as "she was able to flex spine forward 0-90 degrees and squat, but she walks on her heels and toes with difficulty," this does not constitute a medical opinion under

20 C.F.R. § 404.1513(a)(2); § 416.913(a)(2).   Pursuant 20 C.F.R. § 404.1513(a)(2) and § 416.913(a)(2), a medical opinion

> is a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in her ability to perform the physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions); ability to perform mental demands of work activities, such as understanding, remembering, maintaining concentration, persistence, or pace, carrying out instructions, or responding appropriately to supervision, co-workers, or work pressures in a work setting; ability to perform other demands of work, such as seeing, hearing, or using other senses; and ability to adapt to environmental conditions.
>
> [*Jennifer B. v. Kijakazi*, Civ. No. 20-20364, 2022 WL 577960, at *10 (D.N.J. Feb. 25, 2022) (citing 20 C.F.R. § 404.1513(a)(2)).]

Dr. Merlin's report lacks any such statements about Plaintiff's restrictions in work-related activities as required by the regulations to constitute a medical opinion. *See id.* at 11 (noting that an ALJ is not required to evaluate medical reports that are not considered "medical opinions" under the relevant regulations). As a result, even though the ALJ evaluated Dr. Merlin's report, he was not required to do so. *Id.*

### 3. Past Relevant Work as a Loan Officer

Finally, Plaintiff argues that the ALJ erred at step four by concluding that Plaintiff could return to her past relevant work (PRW) as a loan officer (DOT #186.267-018). (ECF No. 12 at 43 citing (AR 32).) Plaintiff takes issue with the ALJ concluding that Plaintiff could return to her PRW because the ALJ provides "no specific findings or analysis regarding the physical and mental demands of this work as required by SSR 82-62." (*Id.*) Moreover, Plaintiff argues that the Vocational Expert's (VE) testimony that Plaintiff's PRW requires her to perform job duties outside

of the definition of a loan officer which means that her work is a composite job, and the ALJ was required to perform a composite job analysis at step 4 and 5.[12]   (*Id.* at 44-45.)

Defendant contests this argument and argues that the ALJ acted in accordance with SSA regulations and guidelines because "the vocational expert testified that Plaintiff's past relevant work as a loan officer was not a composite job because although the DOT definition of the job does not specifically state that a loan officer sell warranties and assist in the sales of motor vehicles, these activities are generally part of the job." (ECF No. 13 at 26-27 (citing AR 32).) Defendant further argues in the alternative that "even if Plaintiff's past relevant work as a loan officer were a composite job, the ALJ's step four finding remains valid because the ALJ found that Plaintiff could perform the loan officer job both as generally and as actually performed." (*Id.* at 27 (citing AR 32).) During the Hearing, Plaintiff testified that she previously worked as a finance manager at an automobile dealership. (AR 69-70.) In addition to her paperwork duties as a finance manager, Plaintiff testified that she also sold "products," participated in getting loans approved, and "stuff like that." (*Id.* at 69.) Plaintiff further testified that there was a sales component to her job, and that she frequently worked deals and helped people get approved for loans, especially when a deal was about to fall apart. (*Id.* at 70.) Plaintiff admitted that she did not receive commissions on any sales and was only paid her salary as a finance manager. (*Id.*) Moreover, in one of Plaintiff's past job as a supervisor, she also had supervisory powers such as hiring and firing people. (*Id.*)

---

[12]   Pursuant Soc. Sec. Ruling 82–61, 1982 WL 31387, at *2, "composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT." Moreover, according to the SSA Program Operations Manual System DI 25005.020, "[w]hen comparing the claimant's RFC to a composite job as the claimant performed it, [the ALJ can] find the claimant capable of performing the composite job only if he or she can perform all parts of the job. A composite job does not have a DOT counterpart, so [the ALJ should not] evaluate it at the part of step 4 considering work "as generally performed in the national economy."

The ALJ then consulted the Vocational Expert (VE), who testified that Plaintiff's past work as a "finance manager with an auto dealership comes under the heading of a loan officer [DOT No. 186.267-018." (*Id.* at 78.)  The VE then testified that a hypothetical individual with Plaintiff's RFC could perform Plaintiff's PRW as described by the DOT and as specifically described by Plaintiff. (*Id.* at 79.)  Plaintiff's counsel then asked the VE "where in the definition for loan officer is it found that the individual is responsible for selling warranties or assisting in the sales of motor vehicles?" (*Id.* at 80.)  The VE testified that "there's nothing specifically in the definition for a loan officer that says that they sell warranties, but they do, as part of a car dealership, generally do that. So, anyone who is financing or doing the loans has responsibility for also upselling.  That's just part of the job" and that he did not see Plaintiff's past work as a composite job.  (*Id.* at 80-81.) However, the VE soon after admitted that there were aspects of Plaintiff's particular job hat fell outside of the DOT definition for loan officer.  (*Id.* at 81.)

The ALJ accepted the VE's testimony because the VE's testimony was consistent with "the information contained in the DOT and that the [VE] expert was well qualified to testify as to Loan Officer duties/responsibilities as part of a car dealership based on this expert's professional experience, education, and training." (AR 32.)

"To qualify as a composite job, the job must contain substantial elements of two or more occupations and lack any counterpart in the DOT." *Reed v. Berryhill*, 337 F. Supp. 3d 525, 529 (E.D. Pa. 2018) (affirming the ALJ PRW assessment because Plaintiff "has not demonstrated his past work included significant variations with main duties included in another DOT position.") Meaning, "the position must also involve additional main duties from another DOT position, rather than merely excessive function with the job duties from one DOT position." *Giddings v. Berryhill*,

Civ. No. 16-6060, 2018 WL 4252426, at *4 (E.D. Pa. Sept. 5, 2018) (citation and quotations omitted).

Here, the ALJ provided a detailed justification as to why he relied on the VE's testimony that Plaintiff did not have a composite job – the "[VE] expert was well qualified to testify as to Loan Officer duties/responsibilities as part of car dealership based on this expert's professional experience, education, and training." (AR 32.)  In so testifying, the VE stated: "there's nothing specifically in the definition for a loan officer that says that they sell warranties, but they do, as part of a car dealership, generally do that. So, anyone who is financing or doing the loans has responsibility for also upselling.  That's just part of the job." (*Id.* at 80-81.)  Additionally, upon the Court's review of the record, the Court is not aware of any evidence or testimony from Plaintiff suggesting that the sales function of her job was a "main duty" of her role as finance supervisor. *See Reed*, 337 F. Supp. 3d at 529 (finding that for a job to be composite, the position must involve additional main duties from another DOT position); *Giddings*, 2018 WL 4252426, at *4 (same).[13] Following this, the ALJ's PRW determination was based on substantial evidence.  *Peter R. v. Comm'r of Soc. Sec.*, Civ. No. 22-05268, 2023 WL 4102891, at *5 (D.N.J. June 20, 2023) (finding ALJ's PRW was based on substantial evidence because the ALJ considered the VE's and claimant's testimony when providing her PRW assessment).

---

[13]     The Court also notes that the VE told the ALJ that a hypothetical individual with Plaintiff's RFC could perform Plaintiff's PRW as described by the DOT *and* as specifically described by Plaintiff, which indicates that the ALJ accounted for the specific nuances of Plaintiff's prior work. (AR 79) ((emphasis added).)

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, and for good cause shown, the Commissioner's decision to deny

Plaintiff benefits shall be **AFFIRMED**.   An appropriate Order follows.


**Dated**: September 29 , 2023

GEORGETTE CASTNER
**United States District Judge**